```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

SECURITIES AND EXCHANGE            :
COMMISSION
                                   :
          Plaintiff,                    09 Civ. 4150 (RMB)(HBP)
                                   :
    -against-                           OPINION
                                   :    AND ORDER
MICHAEL STRAUSS, STEPHEN HOZIE,
and ROBERT BERNSTEIN                :

          Defendants.              :

----------------------------------X
```

          PITMAN, United States Magistrate Judge:


I.  Introduction


          I write to resolve two pending discovery disputes

between the parties:  (1) defendant Stephen Hozie's application

to compel plaintiff Securities and Exchange Commission ("SEC") to

produce notes taken by SEC staff of memoranda of witness inter-

views prepared by the FBI, as well as notes and memoranda of

other witness interviews, and (2) Hozie's application to compel

the SEC to grant him access to a database of work papers which is

maintained by third party Deloitte and Touche ("D&T") and to

which the SEC obtained remote access through an investigative

subpoena.[1]

---

          [1]The discovery disputes resolved by this Order have been
raised at a conference and in a series of letters.  There are no
docketed motions that correspond to the issues addressed herein.

For reasons discussed below, (1) Hozie's application to compel production of the witness interview notes and memoranda is denied and (2) Hozie's application to compel the SEC to grant him remote access to D&T's electronic database is denied.

II. <u>Facts</u>

This is an enforcement action brought by the SEC against defendants Michael Strauss, Stephen Hozie and Robert Bernstein, senior officers of American Home Mortgage Investment Corporation ("American Home"), for accounting fraud (Complaint, dated Apr. 29, 2009 ("Compl.") ¶ 1).   The complaint alleges that the defendants violated various provisions of the Securities Act and the Securities Exchange Act by setting "materially under-stated reserves," making misleading and incomplete public state-ments, misleading their auditors, and concealing information from their auditors (Compl. ¶¶ 2-3, 5, 7).   The Honorable Richard M. Berman, United States District Judge, entered a final consent judgment as to defendant Michael Strauss shortly after the complaint was filed (Final Judgment as to Def. Michael Strauss, entered Apr. 29, 2009; Letter from David Stoelting, Esq. to the undersigned, dated Sept. 18, 2009 ("SEC Sept. 18 Letter") at 1). As of September 11, 2009, defendant Robert Bernstein had reached a settlement in principle with the SEC, but it had not yet been

finalized.  Hozie appears to be the only defendant actively
pursuing discovery at this time.

    A.  The SEC's Notes
        and Memoranda of
        <u>Witness Interviews</u>

        The parties' first dispute arises out of Hozie's
requests for three categories of witness interview notes and the
SEC's assertion that the documents are protected by the work-
product doctrine.

        The SEC commenced its investigation of American Home in
July 2007; the SEC issued a formal order of investigation on
August 23, 2007 (Declaration of Alison T. Conn, dated Sept. 18,
2009 ("Conn. Decl."), ¶¶ 3-4).  Three attorneys -- Alison Conn,
Vincent Sherman and Maureen Peyton King -- participated in the
investigation (Conn Decl. ¶ 5).  They were assisted by an accoun-
tant -- James Addison -- and two SEC "examiners"  -- Debbie Chan
and Kathy Murdocco (Conn Decl. ¶ 5).  The individuals participat-
ing in the investigation generated three categories of notes that
are in issue in the present dispute:  (1) 16 sets of notes of
interviews of witnesses; (2) 8 sets of notes summarizing portions
of memoranda prepared by the FBI which summarize interviews with
witnesses and (3) three sets of notes of proffers made by Hozie
and Bernstein to the United States Attorney's Office for the
Eastern District of New York (<u>see</u> Plaintiff's Amended Privilege

3

Log at 6-7, annexed as Ex. A to the Letter of Lawrence Gerschwer, Esq., to the undersigned, dated Sept. 18, 2009 ("Hozie Sept. 18 Letter")).  Eight sets of notes in the first category were prepared by non-attorneys; none of the notes in the second category were prepared by non-attorneys, and two of the three sets of notes in the third category were prepared by non-attorneys (Plaintiff's Amended Privilege Log at 6-7, annexed as Ex. A to Hozie Sept. 18 Letter).  All of the notes in issue relate to interviews or proffer sessions conducted after the SEC issued its formal order of investigation (Plaintiff's Amended Privilege Log at 6-7, annexed as Ex. A to Hozie Sept. 18 Letter).  There is no contention that any of the witnesses whose statements are purportedly reflected in the notes are unavailable for interview or deposition by Hozie or his counsel (see Conn Decl. ¶ 10).

> According to the SEC,

>> During the investigation [the Assistant Regional Director in the SEC's New York Regional Office, Alison T. Conn], took and directed the staff to take certain investigative steps . . . .  The investigative steps [Conn] undertook included preparing notes of interviews of witnesses and instructing attorney, accountant and investigative staff members to prepare notes of interviews of witnesses.  The staff took these notes in furtherance of the formal investigation the purpose of which was to determine whether to recommend that the Commission initiate litigation against any entities or individuals for violations of the securities laws. Thus, these notes were made in anticipation of litigation.

(Conn. Decl. ¶ 6).

4

The SEC has refused to produce all three categories of documents, claiming that each is protected by the work-product doctrine, the deliberative process privilege and the law enforcement privilege. Hozie challenges only the assertion of the work-product privilege.

B.   The SEC's Remote Access to
     the Deloitte & Touche Database

Through an investigative subpoena, the SEC obtained remote access to an electronic database containing D&T's audit work papers concerning its audits and quarterly reviews of American Home (Letter from Lawrence Gerschwer, Esq., to the undersigned, dated Sept. 10, 2009 ("Hozie Sept. 10 Letter") at 1; Conn Decl. ¶ 11; Letter from Charles F. Walker, Esq., to Alison Conn, dated Feb. 6, 2008 ("Walker Letter") at 1). D&T uses software that allows it to conduct "largely paperless audits of clients by facilitating creation and control of electronic audit working papers that reflect [its] audit methodology and procedures" (Declaration of Eric T. Streck, Esq., dated Sept. 17, 2009 ("Streck Decl.") ¶ 2). D&T uses a third-party litigation support services provider, Solutions Plus+, to provide secure, remote access to D&T's electronic audit working papers for litigants (Streck Decl. ¶ 4). Access is by way of the internet and requires the user to input a code from an "RSA SecureID fob," a small portable device that generates a new access code once per

minute, as well as a separate password and user name (Streck
Decl. ¶ 4; Walker Letter at 1-2).  In order to access the data-
base remotely, the SEC has obtained four of these "key fobs,"
each associated with a separate user name containing the letters
"sec" and a password (Conn Decl. ¶ 12; Walker Letter at 1-2).
The SEC pays Solutions Plus+ $2,500.00 a month for this access,
plus a $66.00 one-time charge for each fob (Streck Decl. ¶ 7).

      Apparently, if a user accessing the database remotely
tries to open an audit file that is already being viewed by
another user, the party attempting to open the file will be
denied access (<u>see</u> SEC Sept. 18 Letter at 4; Streck Decl. ¶ 14).
Additionally, that party will receive a message indicating which
other user is currently viewing that file (Streck Decl. ¶ 14;
Letter from David Stoelting, Esq., to the undersigned, dated
Sept. 22, 2009 ("SEC Sept. 22 Letter") at 2; <u>see</u> SEC Sept. 18
Letter at 4).

      In his discovery requests, Hozie asked the SEC to share
its database access with him -- either by giving him one or more
of its key fobs, or by agreeing to allow him to access the same
database through additional key fobs obtained from Solutions
Plus+ (Hozie Sept. 10 Letter at 1; Hozie Sept. 18 Letter at 2;
Letter from Lawrence Gerschwer, Esq., to the undersigned, dated
Sept. 22, 2009 ("Hozie Sept. 22 Letter") at 5).  The SEC declined
to share its remote access to the database by giving defendant

Hozie a key fob, and, by letter, Hozie requested that I compel production (SEC Sept. 18 Letter at 1; Hozie Sept. 18 Letter at 2).  The SEC submitted letter memoranda opposing Hozie's application on the grounds that the database is not in the SEC's "possession, custody, or control," for purposes of Federal Rule of Civil Procedure 34(a) and, further, that shared access to the database would reveal attorney work product (SEC Sept. 18 Letter at 3-4; SEC Sept. 22 Letter at 1-2).  It argues that Hozie is obligated to obtain his own access to the database by serving a Rule 45 subpoena on D&T, and that he should have Solutions Plus+ "create a second, identical secure server environment" for him (SEC Sept. 18 Letter at 4; Streck Decl. ¶ 9).  The SEC maintains that it has not refused production in order to prevent Hozie from having access to the database, but it contends that he is obligated to seek his own access directly from D&T and Solutions Plus+ rather than obtaining free access through the SEC (SEC Sept. 18 Letter at 3; SEC Sept. 22 Letter at 2).

D&T does not typically provide more than one party with access to the same database environment hosted by Solutions Plus+ (Streck Decl. ¶ 11).  A letter from D&T's outside counsel to the SEC concerning the remote access arrangement stated that the database materials "remain the property of D&T and are being provided to [the SEC] in connection with the Commission's in-

quiry" regarding American Home (Walker Letter at 2; Conn Decl. ¶ 13).

III.   Analysis

    A.   The Interview Notes
       and Summaries

      The scope of the work-product doctrine is defined in Fed.R.Civ.P. 26(b)(3), which provides:

> (A)  Documents and Tangible Things.  Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But . . . those materials may be discovered if:
>
>   (i)  they are otherwise discoverable under Rule 26(b)(1); and
>
>   (ii) the party shows that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B)  Protection Against Disclosure.  If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed.R.Civ.P. 26(b)(3)(A), (B).[2]

_____

[2]Although the SEC asserts three different bases for withholding the interview notes and summaries, Hozie challenges only the SEC's assertion of the work-product privilege.  Given the fact that courts do not ordinarily entertain serial motions addressing the same discovery response, Hozie's failure to address the other two privileges asserted by the SEC is odd; even

The work-product doctrine arises out of the realization that

> [i]n performing his various duties . . . it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. . . . This work is reflected, of course, in <u>interviews</u>, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways-aptly though roughly termed . . . as the "Work product of the lawyer."  Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten.  An attorney's thoughts, heretofore inviolate, would not be his own.  Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial.  The effect on the legal profession would be demoralizing.  And the interests of the clients and the cause of justice would be poorly served.

<u>Hickman v. Taylor</u>, 329 U.S. 495, 510-11 (1947) (emphasis added); <u>see also</u> <u>United States v. Adlman</u>, 134 F.3d 1194, 1196 (2d Cir. 1998) (stating that work-product doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries," <u>quoting</u> <u>Hickman v. Taylor</u>, <u>supra</u>, 329 U.S. at 511).

---

if I find that work-product protection is not applicable, unless successfully challenged, the remaining privileges would protect the documents from production.  Nevertheless, because I find that the work-product doctrine does protect the interview notes and summaries from production, I need not resolve the consequences of Hozie's failure to challenge all the grounds on which these documents are being withheld.

A party asserting work-product protection must prove three elements:  "[t]he material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative."  In re Grand Jury Subpoenas dated Dec. 18, 1981 & Jan. 4, 1982, 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982) (McLaughlin, D.J.); see Adamowicz v. I.R.S., 552 F. Supp. 2d 355, 365 (S.D.N.Y. 2008) (Preska, D.J.).

If the proponent succeeds in establishing these elements, the burden then shifts to the parties seeking discovery of work-product material to show substantial need for the material and an inability to obtain its substantial equivalent from another source without undue hardship.  Weinhold v. Witte Heavy Lift, Inc., 90 Civ. 2096 (PKL), 1994 WL 132392 at *3 (S.D.N.Y. Apr. 11, 1994) (Leisure, D.J.); accord Kent Corp. v. N.L.R.B., 530 F.2d 612, 623-24 (5th Cir. 1976).  However, "while factual materials falling within the scope of the doctrine may generally be discovered upon this showing of 'substantial need,' attorney mental impressions are more rigorously protected from discovery[.]"  In re Leslie Fay Cos. Sec. Litig., 161 F.R.D 274, 279 (S.D.N.Y. 1995) (Conner, D.J.).

To the extent the interview notes and memoranda were prepared by counsel, they easily fit within the protection of the work-product doctrine.  In S.E.C. v. Cavanagh, 98 Civ. 1818

10

(DLC), 1998 WL 132842 (S.D.N.Y. Mar. 23, 1998), the subject of an SEC investigation, like Hozie here, sought notes of interviews the staff had conducted in order to determine whether to commence an enforcement action.  The Honorable Denise L. Cote, United States District Judge, sustained the assertion of work product stating:

> The notes at issue in this case are classic work-
> -product under the standard re-affirmed in [United
> States v. Adlman, 134 F.3d 1194 (2d Cir. 1998)].  As
> attested to by Doherty in her declaration in opposition
> to disclosure of Commission work-product ("the Doherty
> declaration"), the notes were taken by SEC attorneys
> during interviews that, although they preceded the
> formal initiation of this litigation, were conducted
> "in order to provide the Commission with information so
> that it could make the determination whether to proceed
> with litigation in this matter."  This type of work,
> prepared in the anticipation of litigation, falls
> squarely within the protections of the work-product
> doctrine.  See Adlman, 134 F.3d at 1197 ("[i]t is
> universally agreed that a document whose purpose is to
> assist in preparation for litigation is within the
> scope of the Rule and thus eligible to receive protec-
> tion").

1998 WL 132842 at *2 (footnote omitted).  Other cases reaching the same results on similar facts include S.E.C. v. Stanard, 06 Civ. 7736 (GEL), 2007 WL 1834709 at *2 (S.D.N.Y. June 26, 2007) (Lynch, D.J.) (notes of interviews "conducted in order to deter-mine whether to initiate litigation" protected as work product); S.E.C. v. Treadway, 229 F.R.D. 454, 455-56 (S.D.N.Y. July 26, 2005) (Marrero, D.J.) (pre-litigation witness interviews pro-tected as work product); S.E.C. v. Downe, 92 Civ. 4092 (PKL), 1994 WL 23141 at *2 (S.D.N.Y. Jan. 27, 1994) (Leisure, D.J.)

11

("The existence of an active investigation, therefore, is strong circumstantial evidence that the agency lawyer prepared the document with future 'litigation in mind.'" (citation and inner quotations omitted)).

Although Hozie accuses the SEC of "sleight of hand" with respect to its withholding of notes summarizing portions of interview memoranda prepared by the FBI (Hozie Sept. 18 Letter at 3), it is Hozie who is really engaging in legerdemain.  Hozie argues that the interview memoranda prepared by the FBI are not privileged and, therefore, the information contained in the memoranda cannot be protected as work product "simply by having an attorney transcribe them instead of just obtaining actual copies of the 302s[3]" (Hozie Sept. 18 Letter at 3).  This argument would have force if Hozie had sought the 302s themselves, and the SEC resisted production on the ground that its attorneys had summarized them.  The documents at issue here, however, are not the 302s themselves.[4]  Rather, Hozie is seeking  the summaries of selected portions of the 302s prepared by the SEC's attorneys (Plaintiff's Amended Privilege Log at 7, annexed as Ex.

---

[3]"FD-302" is the designation of the form used by special agents of the FBI to record information that was gathered in the course of an investigation and that may become evidence.

[4]Curiously, it does not appear that Hozie has ever sought the 302s themselves; all he appears to be seeking are the SEC's summaries of the 302s.  This tactic strongly suggests that Hozie is more interested in his adversary's analyses of the witnesses' statements than in the witnesses' statements themselves.

A to Hozie Sept. 18 Letter).  By definition, summaries are not verbatim copies and necessarily involve some level of judgment in deciding what to note and what not to note.  Thus, by mis-characterizing the summaries as handwritten, verbatim copies, it is Hozie, and not the SEC, who is attempting a conjurer's trick.

Finally, to the extent that Hozie is seeking notes and memoranda prepared by staff members of the SEC who are not attorneys, his arguments come closer to hitting the mark, but do not quite succeed.  According to the evidence currently before me, the non-attorneys who prepared notes of interviews were supervised by and acting at the direction of an attorney (Conn Decl. ¶¶ 5-6).  This evidence is sufficient to bring the work of the non-attorney staff members within the protection of the work-product doctrine.  United States v. Nobles, 422 U.S. 225, 238-39 (1975) ("It is . . . necessary that the [work-product] doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself."); S.E.C. v. Nacchio, 05-cv-00480-MSK-CBS, 2007 WL 219966 at *10 (D. Colo. Jan. 25, 2007) ("The work-product doctrine is no less applicable to materials prepared in anticipation of litigation by SEC accountants working under the direction or at the behest of Commission attorneys.").

In support of his position, Hozie relies primarily on the decision of the Honorable Michael H. Dolinger, United States Magistrate Judge, in S.E.C. v. Thrasher, 92 Civ. 6987 (JFK), 1995

WL 46681 (S.D.N.Y. Feb. 7, 1995) which denied work-product
protection to interview notes similar to those at issue here.
Hozie, however, overlooks the fact that the Court of Appeals
subsequently rejected a limitation on the scope of the work-
product doctrine on which Magistrate Dolinger relied in <u>Thrasher</u>.
In describing what constitutes work product, Magistrate Judge
Dolinger expressly relied on a number of cases that limited work-
product protection to documents prepared principally or exclu-
sively to assist in litigation:

> In applying Rule 26(b)(3), the courts have gener-
> ally ruled that it "applies only to documents prepared
> principally or exclusively to assist in anticipated or
> ongoing litigation." <u>Martin v. Valley Nat'l Bank</u>, 140
> F.R.D. 291, 304 (S.D.N.Y. 1991). <u>See</u>, <u>e.g.</u>, <u>Binks Mfg.</u>
> <u>Co. v. National Presto Indus., Inc.</u>, 709 F.2d 1109,
> 1118-19 (7th Cir. 1983); <u>In re Grand Jury Investiga-</u>
> <u>tion</u>, 599 F.2d 1224, 1229 (3d Cir. 1979); <u>Hardy v. New</u>
> <u>York News, Inc.</u>, 114 F.R.D. 633, 644 (S.D.N.Y. 1987).
> Consequently, "if a party prepares a document in the
> ordinary course of business, it will not be protected
> even if the party is aware that the document may also
> be useful in the event of litigation." <u>Bowne of New</u>
> <u>York, Inc. v. AmBase Corp.</u>, 150 F.R.D. at 471. <u>See</u>,
> <u>e.g.</u>, <u>Binks Mfg. Co. v. National Presto Indus., Inc.</u>,
> 709 F.2d at 1119; <u>Hardy v. New York News, Inc.</u>, 114
> F.R.D. at 644; <u>Joyner v. Continental Ins. Cos.</u>, 101
> F.R.D. 414, 415-16 (S.D. Ga. 1983).

Three years later the Court of Appeals for the Second
Circuit expressly rejected this limitation on the work-product
doctrine.

> We believe that a requirement that documents be pro-
> duced primarily or exclusively to assist in litigation
> in order to be protected is at odds with the text and
> the policies of the Rule. Nowhere does Rule 26(b)(3)
> state that a document must have been prepared <u>to</u> <u>aid</u> in

14

the conduct of litigation in order to constitute work product, much less <u>primarily</u> <u>or</u> <u>exclusively</u> to aid in litigation.  Preparing a document "in anticipation of litigation" is sufficient.

<u>United States v. Adlman</u>, <u>supra</u>, 134 F.3d at 1198.

Since the Court of Appeals subsequently rejected one of the limitations on the work-product doctrine that was central to the decision in <u>Thrasher</u>, I respectfully submit that <u>Thrasher</u> no longer reflects the current state of the law.

Thus, because the SEC has shown that all the interview notes and memoranda in issue were prepared in anticipation of litigation and Hozie does not even argue that "substantial need" justifies production of the documents, his application to compel production of the interview notes and memoranda is denied.

   B.   <u>Production of D&T Database</u>

   1.   <u>Control</u>

Defendant Hozie argues that the SEC's remote access arrangement puts D&T's database sufficiently within the SEC's control such that the SEC is obligated to give him access (Hozie Sept. 10 Letter; Hozie Sept. 18 Letter; Hozie Sept. 22 Letter). The SEC responds that it lacks control of the database and the ability to grant access to third parties (SEC Sept. 18 Letter; SEC Sept. 22 Letter).

15

Under Federal Rule of Civil Procedure 34(a), a party is entitled to documents that are in the "possession, custody, or control" of its adversary.  "Control" is construed broadly and may cover materials that are not in a party's actual physical possession.  United States v. Stein, 488 F. Supp. 2d 350, 360-61 (S.D.N.Y. 2007) (Kaplan, D.J.) (considering "control" as used in Federal Rule of Criminal Procedure 16, but noting that control carries the same meaning in Rule 16 as it does in Federal Rules of Civil Procedure 34 and 45); United States v. Freidus, 88 Civ. 6116 (RWS), 1989 WL 140254 at *2 (S.D.N.Y. Nov. 13, 1989) (Sweet, D.J.); Standard Dyeing & Finishing Co. v. Arma Textile Printers Corp., 85 Civ. 5399 (CSH), 1987 WL 6905 at *2 (S.D.N.Y. Feb. 10, 1987) (Haight, D.J.).

There are two ways in which a party not in actual possession of material may have control over it under Federal Rule of Civil Procedure 34(a).  First, a party has control over material that it has the practical ability to obtain.  In re NTL, Inc. Sec. Litig., 244 F.R.D. 179, 195 (S.D.N.Y. 2007) (Peck, M.J.); In re NASDAQ Market-Makers Antitrust Litig., 169 F.R.D. 493, 530 (S.D.N.Y. 1996) (Sweet, D.J.); Golden Trade, S.r.L. v. Lee Apparel Co., 143 F.R.D. 514, 525 (S.D.N.Y. 1992) (Dolinger, M.J.); United States v. Freidus, supra, 1989 WL 140254 at *2. Second, a party has control over material that it has a legal right to obtain.  United States v. Stein, supra, 488 F. Supp. 2d

16

at 361, 363; In re NASDAQ Market-Makers Antitrust Litig., supra, 169 F.R.D. at 530. The discovering party bears the burden of establishing control. Golden Trade, S.r.L. v. Lee Apparel Co., supra, 143 F.R.D. at 525 n. 7 ("In the face of a denial by a party that it has possession, custody or control of documents, the discovering party must make an adequate showing to overcome this assertion."); see also In re Flag Telecom Holdings, Ltd. Sec. Litig., 236 F.R.D. 177, 180 (S.D.N.Y. 2006) (Conner, D.J.).

Although the SEC does not have physical possession of the database, its arrangement with D&T and Solutions Plus+ gives it complete and immediate access to the contents of the database via the web portal (see Streck Decl. ¶ 4; Walker Letter). The SEC seems to contend that mere access is not control, emphasizing that "[t]he agreement between D&T and the SEC . . . does not require D&T to produce the database to the SEC, it only requires access." (SEC Sept. 22 Letter). However, an agreement with a third-party possessor granting a party access to documents, along with an actual mechanism for getting the documents, gives that party the "practical ability to obtain" the documents and so is sufficient to establish that party's control. In re NTL, Inc. Sec. Litig., supra, 244 F.R.D. at 195-96 (finding control based on "practical ability to obtain" where an agreement obligated a third party to make the documents available to the responding party and the responding party was routinely able to get the

17

documents from the third party through a telephone request).
Indeed, "access" is exactly what the phrase "the practical
ability to obtain" seems to contemplate.  The SEC gained the
"practical ability to obtain" the material in the D&T database
through its arrangement with D&T and Solutions Plus+:  D&T has
agreed to make the database material available to the SEC and,
through the web portal, key fobs, user names, and passwords, has
plainly given the SEC the practical means to obtain it.

      The SEC also appears to have the legal right to obtain
the materials in the database by virtue of its agreement with
D&T.  See United States v. Stein, supra, 488 F. Supp. 2d at 363
(government had legal right to obtain documents where an agree-
ment obligated a third party to provide it with the documents on
request); In re NTL, Inc. Sec. Litig., supra, 244 F.R.D. at 195
(party had legal right to obtain documents where the actual
possessor was under a contractual obligation to make them avail-
able to that party).  Because the SEC has both the practical
ability and the legal right to obtain the working papers con-
tained in the database, it has control over them for the purposes
of Rule 34(a).

      The fact that the material sought is electronic and
organized in a database does not, in itself, affect the extent to
which it must be produced, as Rule 34 includes "electronically

stored information" and "data compilations" in its definition of discoverable documents.  <u>See</u> Fed.R.Civ.P. 34(a).

Nor does it matter that by giving defendant Hozie a key fob to access the database the SEC may violate the terms of its agreement with D&T.  The SEC argues that it lacks the ability to grant third parties access to the database (SEC Sept. 18 Letter at 4), and the letter from D&T's counsel outlining the terms of access suggests that use of the database is to be limited to the SEC, stating that the materials "remain the property of D&T and are being provided to [the SEC] in connection with the Commission's inquiry in the above-captioned matter" (Walker Letter at 2).  But any prohibition the agreement imposes on turning over a key fob to another entity is not significant here, because discovery obligations under the Federal Rules of Civil Procedure trump most other commitments.  <u>See</u> <u>In re Bankers Trust Co.</u>, 61 F.3d 465, 469-70 (6th Cir. 1995) (documents discoverable even where federal regulations would otherwise prohibit responding party from producing documents); <u>Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc.</u>, 159 F.R.D. 562, 566 (D. Kan. 1994) (banks had ability to obtain, and so were obligated to produce, Federal Deposit Insurance Corporation reports despite FDIC regulations requiring that the FDIC consent to their release).  An agreement providing that the key fobs are for the sole use of the SEC does

not overcome the SEC's discovery obligations under the Federal
Rules of Civil Procedure.

       2.   Attorney Work Product

       The SEC argues that allowing defendant Hozie to share
its remote access to the D&T database would result in the expo-
sure of attorney work product because of the potential for one
party to see what audit file its adversary has open (SEC Sept. 18
Letter at 4; SEC Sept. 22 Letter at 2), and that this information
would reveal counsel's thoughts and mental impressions (SEC Sept.
18 Letter at 4).  Hozie responds that the possibility of such
observations is speculative and that the selection of any partic-
ular file, alone, would not reveal counsel's thought processes
(Hozie Sept. 22 Letter at 6).

       In Sporck v. Peil, 759 F.2d 312, 316-17 (3d Cir. 1985),
the Third Circuit extended the scope of the work-product doc-
trine, holding that the selection of a subgroup of documents
produced in discovery and used to prepare a witness for a deposi-
tion was attorney work product protected under Fed.R.Civ.P.
26(b)(3).  See also United States v. Pepper's Steel & Alloys,
Inc., 132 F.R.D. 695, 698 (S.D. Fla. Oct. 17, 1990) ("[O]pinion
work product may be reflected in something as subtle as the act
of selecting or ordering documents because this may reflect an
attorney's opinion as to the significance of those documents in

the preparation for his case."). "The Second Circuit has [also] recognized that the selection and compilation of documents may fall within the protection accorded to attorney work product, despite the general availability of documents from both parties and non-parties during discovery." S.E.C. v. Collins & Aikman Corp., 256 F.R.D. 403, 408 (S.D.N.Y. 2009) (Scheindlin, D.J.). However, the Second Circuit treats this category of protection as "a 'narrow exception' aimed at preventing requests with 'the precise goal of learning what the opposing attorney's thinking or strategy may be.'" S.E.C. v. Collins & Aikman Corp., supra, 256 F.R.D. at 408; see also In re Grand Jury Subpoenas Dated Oct. 22, 1991 & Nov. 1, 1991, 959 F.2d 1158, 1166-67 (2d Cir. 1992); Gould Inc. v. Mitsui Min. & Smelting Co., Ltd., 825 F.2d 676, 680 (2d Cir. 1987); S.E.C. v. Morelli, 143 F.R.D. 42, 47 (S.D.N.Y. 1992) (Leisure, D.J.). For this "narrow exception" to apply, there must be "a real, rather than speculative, concern that the thought processes of . . . counsel in relation to pending or anticipated litigation would be exposed." Gould Inc. v. Mitsui Min. & Smelting Co., Ltd., supra, 825 F.2d at 680; see also In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002, 318 F.3d 379, 386 (2d Cir. 2003) ("Not every selection and compilation of third-party documents by counsel transforms that material into attorney work product."); In re Grand Jury Subpoenas Dated Oct. 22, 1991 & Nov. 1, 1991, supra, 959 F.2d at 1167; S.E.C. v.

Collins & Aikman Corp., supra, 256 F.R.D. at 408; United States

v. Pepper's Steel & Alloys, Inc., supra, 132 F.R.D. at 698 (work-

product protection "is not triggered unless disclosure creates a

real, nonspeculative danger of revealing the lawyer's thoughts").

        Here, there is no "selection or compilation" of docu-

ments of the kind in Sporck.  See Sporck v. Peil, supra, 759 F.2d

at 316.  Merely opening a document contained in a database is not

the same as "selecting" it for any litigation-related purpose.  A

major aspect of reviewing any mass of documents, whether they are

housed in a database or in a box, is assessing each one to

determine if it has any relevance at all.  The simple fact that a

document has been opened does not imbue it with any special

significance:  when one side realizes its adversary has a docu-

ment open, it is as just as likely (perhaps more likely[5]) that

its adversary is deciding it is irrelevant than that it is

relevant.  The decision to open a given file in the database,

then, reveals little about the user's thought process or opinion,

and identification of documents that were opened cannot be

considered protected work product.  As the Honorable Shira A.

Scheindlin, United States District Judge, has aptly stated, the

"theory . . . that every document or word reviewed by an attorney

is 'core' attorney work product . . . leaves nothing to surround

---

        [5]Experience teaches that the number of documents actually
used in most securities actions is a small fraction of the
documents produced.

the core." S.E.C. v. Collins & Aikman Corp., supra, 256 F.R.D. at 410. Even the observation that one's adversary has had a document open for a long period of time does not necessarily indicate any special importance -- it is entirely possible that a user would get up from her desk in the middle of systematically reviewing files and leave a completely insignificant file open for several hours. Accordingly, the concern that shared access to the database would result in transmission of information about thought processes or strategies is extremely speculative.

Relatedly, a list of the documents that one side noticed its adversary viewing would certainly not be organized by any ascertainable "legal theory or strategy," a necessary element for work-product protection. See S.E.C. v. Collins & Aikman Corp., supra, 256 F.R.D. at 410. Shared access to the electronic working paper database would not identify the type of coherent, consciously arranged, static set of documents found to be pro-tected work product in Sporck v. Peil, supra, 759 F.2d at 316; at most, it could reveal an ad hoc smattering of files observed by chance (see Streck Decl. ¶ 14; SEC Sept. 18 Letter at 4; SEC Sept. 22 Letter at 2). This rather random transmission of piecemeal information is plainly not an "identification of . . . documents as a group" that would "reveal defense coun-sel's selection process." Sporck v. Peil, supra, 759 F.2d at 315.

23

Accordingly, the proposed access to the database does
not create a work-product concern that would justify barring the
requested discovery.

### 3.   Availability from Another Source

Even when the documents at issue are within the oppos-
ing party's possession, custody or control, it may be inappropri-
ate to compel discovery when the discovering party could easily
obtain the documents elsewhere without any of the difficulties
that might result from compelled production.  The Federal Rules
of Civil Procedure provide that "[o]n motion or on its own, the
court must limit the frequency or extent of discovery otherwise
allowed by these rules or by local rule if it determines that:
(i) the discovery sought . . . can be obtained from some other
source that is more convenient, less burdensome, or less expen-
sive."  Fed.R.Civ.P. 26(b)(2)(C)(i); see also Hall v. Sullivan,
231 F.R.D. 468, 475 (D. Md. 2005) ("part of the Rule 26(b)(2)
analysis requires a determination as to whether the information
should be discovered through the requesting party's chosen
discovery method"); Ares-Serono, Inc. v. Organon Int'l. B.V., 160
F.R.D. 1, 5-6 (D. Mass. 1994) (motion for a protective order
granted where the discovering party could obtain the information
through other means that were less intrusive and burdensome to
the responding party).  The addition of this provision to Rule 26

acknowledged "the existing practice of many courts in issuing protective orders under Fed. R. Civ. P. 26(c); for example, those holding that discovery need not be ordered . . . if the discovering party can obtain the documents in question as readily as can the adverse party."  10A Fed. Proc., L. Ed. § 26:651 (2009).

   Courts have declined to compel production of documents in the hands of one party when the material is equally available to the other party from another source.  Valenzuela v. Smith, 04 Civ. 0900, 2006 WL 403842 at *2 (E.D. Cal. Feb. 16, 2006) ("Defendants . . . will not be compelled to produce documents that are equally available to plaintiff."); Baum v. Village of Chittenango, 218 F.R.D. 36, 40-41 (N.D.N.Y. 2003) ("[C]ompelling discovery from another is unnecessary when the documents sought are equally accessible to all."); Bleecker v. Standard Fire Ins. Co., 130 F. Supp. 2d 726, 738 (E.D.N.C. 2000) ("Discovery is not required when documents are in the possession of or are readily obtainable by the party seeking a motion to compel."); S.E.C. v. Samuel H. Sloan & Co., 369 F. Supp. 994, 995-96 (S.D.N.Y. 1973) (Ward, D.J.) ("It is well established that discovery need not be required of documents of public record which are equally accessible to all parties."); Blair v. Travelers Ins. Co., 9 F.R.D. 99, 99 (W.D. Mo. 1949) (motion for production denied where "[n]early all the documents sought can be obtained by the plaintiff as easily as they can be obtained by the defendant").  In S.E.C. v.

Samuel H. Sloan & Co., supra, 369 F. Supp. at 995, the late
Honorable Robert J. Ward, United States District Judge, denied a
motion to compel production where the movant had the same oppor-
tunity to purchase the document (a hearing transcript) as his
adversary but had chosen not to do so.  He emphasized that "[t]he
purpose of discovery is to enable a party to discover and inspect
material information which by reason of an opponent's control,
would otherwise be unavailable for judicial scrutiny."  (Emphasis
added.)

          The protection from having to produce documents that
are equally available to the other party is not limited to the
public records context.  See Valenzuela v. Smith, supra, 2006 WL
403842 at *2 (physician defendant not required to produce docu-
ments that plaintiff could instead obtain from his own medical
file or the prison law library); Bleecker v. Standard Fire Ins.
Co., supra, 130 F. Supp. 2d at 738-39 (declining to compel
production both of insurance manuals that were in the public
record and of insurance manuals that were not in the public
record but that were readily available from a third party --
though the ruling with regard to the latter category was based on
the court's interpretation of "control"); Blair v. Travelers Ins.
Co., supra, 9 F.R.D. at 99 (declining to compel production of
hospital records and letters that were equally accessible to the
discovering party).

The working paper database maintained by D&T is equally available to all parties here.  Hozie can obtain the same access to the material that the SEC has by arranging with D&T's third-party service provider to have an identical database created and paying for monthly access and its own key fobs[6] (<u>see</u> SEC Sept. 18 Letter at 3-4; Streck Decl. ¶ 9).  Like the discovering party in <u>Sloan</u>, Hozie has chosen not to pay for the documents himself, opting instead to seek free access through discovery of his adversary.  <u>S.E.C. v. Samuel H. Sloan & Co.</u>, <u>supra</u>, 369 F. Supp. at 995.  Admittedly, in contrast to the public records cases, access to the database at issue here is not readily available to the public, and Hozie will, presumably, be required to serve a Rule 45 subpoena on D&T in order to obtain access to the database (<u>see</u> SEC Sept. 18 Letter at 3).  However, this is the normal mechanism for obtaining discovery from third parties, <u>see</u> Fed.R.Civ.P. 45, and the need for a subpoena does not diminish Hozie's obligation to obtain the materials on his own.

Additionally, a shared access arrangement would create significant burdens,[7] making limitation of discovery appropriate

---

[6]The SEC maintains that it is not trying to prevent defendant Hozie from obtaining access, but only from free-riding on the access it purchased (SEC Sept. 22 Letter at 2).

[7]Although Rule 26(b)(2)(C)(i) is the provision most directly applicable here, other subsections of Rule 26 also allow limitations of discovery to prevent an undue burden on the responding party and could apply in this context.  <u>See</u> Fed.R.Civ.P. 26(b)(2)(B) ("A party need not provide discovery of

under Rule 26(b)(2)(C)(i).[8]  First, compelling the SEC to share its access with Hozie would limit its own access.  The SEC paid for four key fobs, and to accede to Hozie's discovery request would mean giving up at least one.  This would impede the SEC's ability to prepare for litigation because fewer SEC employees could access the database at any given time.  Second, because a file may only be viewed by one user at a time (see SEC Sept. 18 Letter at 4; Streck Decl. ¶ 14), giving Hozie access to the same

---

electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost."); Fed.R.Civ.P. 26(c)(1)(A), (C) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:  (A) forbidding the disclosure or discovery . . . (C) prescribing a discovery method other than the one selected by the party seeking discovery.").

[8]There is a general reluctance to allow a party to access its adversary's own database directly.  The Advisory Committee Notes to the 2006 Amendments to Rule 34 explain that Rule 34(a) is not meant to "create a routine right of direct access to a party's electronic information system" and advises that courts "guard against undue intrusiveness resulting from inspecting or testing such systems."  Thus, courts have declined to find an automatic entitlement to access an adversary's database. Cummings v. Gen. Motors Corp., 365 F.3d 944 (10th Cir. 2004) (unduly burdensome to compel access to defendant automobile manufacturer's computer databases), abrogated on other grounds by Unitherm Food Sys., Inc. v. Swift Eckrich, Inc. 546 U.S. 394 (2006); In re Ford Motor Co., 345 F.3d 1315, 1316 (11th Cir. 2003) ("Rule 34(a) does not grant unrestricted, direct access to a respondent's database compilations."); see Convolve, Inc. v. Compaq Computer Corp., 223 F.R.D. 162, 169 (S.D.N.Y. 2004) (Francis, M.J.) (granting direct access to adversary's databases not warranted where adversary had not destroyed or withheld relevant information).  Although the database at issue is not the SEC's own, and must be accessed remotely by both parties, granting Hozie direct access would still impose a burden on the SEC.

database environment would interfere with the parties' ability to
view the files.  This would be a significant nuisance to both
parties, as they are likely to want to spend time reviewing the
same files.  It would also create the potential for abuse,
allowing one party to prevent the other from viewing a file by
leaving it open on his own computer for long periods of time.[9]
To be sure, it is not unusual for compliance with a discovery
request to limit the possessing or controlling party's own
ability to engage with the material -- this occurs, for example,
when one party requests inspection of land or of a tangible thing
in the other party's control or possession.  See Fed.R.Civ.P.
34(a)(2).  However, the limitation in those situations is con-
fined to a discrete time period.  In this case, the surrender of
one of the SEC's key fobs to Hozie would subject its own access
to a potentially obtrusive level of interference for the remain-
der of the discovery period.

        Third, the SEC undoubtedly has many occasions to
arrange for remote access to audit working paper databases such
as this one, and compelling that it turn over one or more of its
key fobs in this case may have the effect of requiring it to
purchase extra key fobs for its adversaries in the future.  See

----

        [9]Hozie argues that Solutions Plus+ may be able to customize
the database to allow multiple users to view the same audit file
at the same time (Hozie Sept. 22 Letter at 6).  Even if true,
this would not solve the other problems shared access poses.

29

S.E.C. v. Samuel H. Sloan & Co., supra, 369 F. Supp. at 996 ("To grant Sloan's motion [to compel production of a hearing transcript from his adversary] would in the future allow all respondents in administrative proceedings, regardless of how many parties may be involved, to obtain a copy of the transcript on motion, thereby requiring the Commission to purchase additional copies of the transcript and placing an undue burden on the Commission.").

Further, "[p]arties are generally responsible for their own costs, and their adversaries are not obligated to finance their litigation." Baum v. Village of Chittenango, supra, 218 F.R.D. at 40-41. Granting Hozie access to the database through an SEC key fob would essentially be forcing the SEC to finance his litigation. Although discovery of material also available elsewhere may be compelled when the discovering party is limited by financial hardship, S.E.C. v. Samuel H. Sloan & Co., supra, 369 F. Supp. at 996, Hozie does not claim any financial obstacle to his purchasing his own access to the D&T database. See S.E.C. v. Samuel H. Sloan & Co., supra, 369 F. Supp. at 996 ("Absent a claim and proof of Sloan's inability to pay, it must be assumed that Sloan is financially able to purchase the transcript he desires."). In the absence of a showing of financial difficulty that might suggest otherwise, discovery should be confined to its objective of providing parties with material they would not

30

otherwise have access to.  See <u>S.E.C. v. Samuel H. Sloan & Co.</u>, <u>supra</u>, 369 F. Supp. at 995.

### 4.  Summary

The audit working paper database is within the SEC's control and shared access with Hozie would not reveal attorney work product.  However, the SEC's discovery obligations do not include sharing access of a database it has obtained through investigative subpoena and a fee arrangement when Hozie can obtain the same access through similar means and faces no financial hardship in doing so.

## IV.  Conclusion

Accordingly, for all the foregoing reasons, (1) Hozie's application to compel production of the SEC's notes and memoranda on other witness interviews is denied, and (2) his application to compel the SEC to share its access to the D&T database is denied.

Dated:  New York, New York
        October 28, 2009

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

31

Copies transmitted to:

David Stoelting, Esq.
Maureen Peyton King, Esq.
U.S. Securities and Exchange Commission
Three World Financial Center
New York, New York  10281

Carl H. Loewenson, Jr., Esq.
Lawrence Gerschwer, Esq.
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, New York  10104